IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sarah J. Jefferies, | ) | C/A No.: 3:14-1317-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Westinghouse Electric Company, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Sarah J. Jefferies ("Plaintiff"), proceeding pro se and in forma pauperis, sues her employer, Westinghouse Electric Company, LLC ("Defendant"). Plaintiff alleges discrimination in Defendant's failure to promote her on the basis of age, race, and national origin pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). [ECF No. 1 at 7–11]. Plaintiff also alleges retaliation pursuant to Title VII and the ADEA. *Id.*

This matter comes before the court on Defendant's motion for summary judgment filed on March 19, 2015. [ECF No. 25]. The motion having been fully briefed [ECF Nos. 31, 32, 35], it is ripe for disposition. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's

motion for summary judgment.

I.      Factual and Procedural Background

Plaintiff is a 59-year-old, white American currently employed as a Planning Specialist at Defendant's Columbia, South Carolina facility. Pl. Dep. at 3:15–16; 5:5–10; 38:19–24.[1]  Defendant hired Plaintiff on July 31, 2000, as a Health Physicist. Pl. Dep. at 17:22–24; 20:16–25. From 2002 until 2010, Plaintiff was a Nuclear Control Technician ("Safeguards position") in Defendant's Environmental Health and Safety ("EH&S") group. Pl. Dep. at 33:15–23. In the Safeguards position, Plaintiff's primary job duty was entering data on United States Nuclear Regulatory Commission ("NRC") Forms to report shipments of nuclear material in and out of Defendant's Columbia facility. Pl. Dep. 35:7–18. In 2007 or 2008, Plaintiff began reporting to Gerard Couture (over 40-year-old white American). Pl. Dep. at 37:16–38:8.

Plaintiff expressed to Couture that she believed she could better fulfill her role if she were an overtime exempt employee as opposed to an hourly employee. Couture Dep. at 18:1–25.[2] In 2010, some EH&S employees retired and, in order to provide a promotional opportunity for Plaintiff, Couture created a new position that included Plaintiff's duties in Safeguards as well as duties from a vacated position ("UAM"). Couture Dep. at 19:2–12; 34:13–35:5. Plaintiff applied for, was offered, and accepted a position as Planner around December 20, 2010. [ECF No. 25-2 at 89]. The UAM duties consisted of various accounting functions in a computer application called "COLUMN,"

---

[1] Excerpts of Plaintiff's deposition may be found at ECF Nos. 25-2, 32-1, and 35-1.
[2] Excerpts of Couture's deposition may be found at ECF Nos. 25-5 and 32-7.

which tracks the uranium flowing through the plant. *Id*.

On or about November 23, 2010, before Plaintiff officially began her new position, she received a positive midyear performance review indicating she was on target and that she had taken over the UAM duties and was doing well. [ECF No. 32-8]. Around June 20, 2011, Couture administered Plaintiff's 2010 annual performance Review, in which Plaintiff received a "P3" rating, meeting expectations in both performance and behavior. [ECF No. 32-2 at 1–8]. Couture testified that Plaintiff began having a few issues working with others and that he had complaints about Plaintiff. Couture Dep. at 33:2–15, 35:9–36:6; *see also* ECF No. 25-2 at 98. Therefore, the review also stated that Plaintiff "will need to continue to work on not letting differences of opinion and methods impact her personally." *Id*. at 8. Plaintiff continued to perform well, receiving an "On Target" rating during the 2011 midyear review given by Couture on October 25, 2011. *Id*. at 15–23. The midyear evaluation also stated "[Plaintiff] needs to continue her development into the professional ranks by learning to work in the current environment without taking issues too personal." *Id*. at 23.

Beginning in approximately February 2012, Couture transitioned out of EH&S and John Watkins (over 40-year-old white American) transitioned into Couture's position. Watkins Dep. 23:7–25.[3] Watkins officially became the manager over EH&S in April 2012. *Id*. Plaintiff's 2011–2012 review period ended March 31, 2012. Watkins Dep. at 24:9–23.

---

[3] Excerpts of Watkins' deposition may be found at ECF Nos. 25-7, 32-10, and 35-3.

Because Couture was Plaintiff's supervisor for the entire 2011 review period, he drafted, decided, and oversaw the review process for Plaintiff's 2011 Annual Performance Review, but did not administer the review. *Id.*; Couture Dep. at 26:5–16.

Defendant's annual review process consists of managers setting an initial performance rating for each subordinate and then submitting those ratings to calibration. Couture Dep. at 23:14–24. Calibration is essentially an equalization process, during which employees' individual performance ratings are collectively analyzed (and possibly readjusted) by a group of peer managers to ensure employees are not affected by hard or easy evaluators. Simmons Dep. at 13:22–14:23.[4] During calibration, the managers meet with their peers to discuss interactions with the employees, and with human resources employees to show managers how they fit on the curve. Couture Dep. at 25:1–22.

On her 2011 performance review, Plaintiff received a rating of "P2," indicating a need for her behavior to improve. [ECF No. 32-3 at 16–22]. Although Defendant asserts that Plaintiff's rating of P2 was given by Couture and unchanged in the calibration process (Simmons Dep. at 13:9–13), Plaintiff claims Couture told her he had given her a P3 rating, but that it had been changed to P2 (Pl. Dep. at 119:13–14). The review stated:

> Jamie[5] has had a couple of issues this year in time management and interactions with other individuals in the work group and other plant support organizations. The stress of the additional duties has at times been challenging for Jamie and impacts her interactions with co-workers. Jamie needs to focus on strategic thinking and delivering of customer success.

---

[4] The parties do not identify Simmons' title, but he appears to work in Defendant's Human Resources ("HR") department. Excerpts of his deposition may be found at ECF Nos. 25-8, 32-17, and 35-2.

[5] Plaintiff is called by her middle name.

4

[ECF No. 32-3 at 16–22]. Couture and Watkins gave Plaintiff the performance review on June 8, 2012. On July 9, 2012, she met with Watkins and Watkins' supervisor, Marc Rosser (over 40-year-old white American) to sign the performance review. *Id*. During the meeting, Watkins handed Plaintiff a Letter of Minimum Job Requirements and "Feedback for Jamie Jefferies." *Id*. at 23–26. Plaintiff disputed the allegations and filed a rebuttal. *Id*. at 27–33.

Plaintiff's Application for Senior Engineer Position

On May 29, 2012, Plaintiff applied for a Senior Engineer position.[6] Pl. Dep. at 84:5–12. Watkins was the hiring manager for the position. Pl. Dep. at 103:14–20. The Senior Engineer position was posted after a technician, Mike Adams (over 40-year-old white American), opted for a voluntary separation package. Pl. Dep. at 91:24–92:9; Stuckey Dec. at ¶3(b).[7] Couture and Watkins wanted to expand Adams' prior role to include engineering responsibilities such as programming in the COLUMN database, so Defendant could adapt to anticipated regulatory changes. Watkins Dep. at 35:23–36:9, 40:21–41:2.

The Senior Engineer job posting requirements explicitly included, among other things, (i) a bachelor's degree in engineering, a related technical discipline or an equivalent, and (ii) two to six plus years of applicable engineering experience. [ECF No. 32-3 at 1–6]. Plaintiff has no bachelor's degree, nor does her resume reference any

---

[6] Plaintiff also applied for a position as a Principal Engineer, but she has not brought a claim regarding the denial of this promotion.

[7] The declaration of Brooks Stuckey may be found at 25-4.

engineering experience. *Id*. at 13–15.

Couture and Watkins both testified that Plaintiff's COLUMN experience did not rise to the level necessary for the Senior Engineer position. Couture Dep. at 78:1–79:4; Watkins Dep. at 35:23–36:9, 40:21–41:2. Further, Watkins and Simmons testified that Plaintiff's P2 rating would have precluded her from advancing to the Senior Engineer position. Watkins Dep. at 51:22–24. p. 51; Simmons Dep. at 58:16–59:15. On June 8, 2012, Couture and Watkins met with Plaintiff and told her that the Senior Engineer position was being awarded to a coworker, Eris Speights (black, Liberian female, DOB 10/4/1972). Pl. Dep. at 94:5–24.; R. Stuckey Dec. at ¶3(c).  Speights had been working for Defendant on a contract basis for eight years through a company called System One. Simmons Dep. at 33:14–25. She had a bachelor's degree in computer science, which Defendant believed made her ideal for the COLUMN programming duties. Couture Dep. at 78: 11–19; 80:5–10.

<u>Alleged Retaliation</u>

Starting in 2009 or 2010, Plaintiff complained to Couture about an alleged consensual romantic relationship Rosser had with a subordinate, Jessica Caulder. Pl. Dep. at 62:13–63:10, 64:10–65:1. Per Plaintiff, the relationship was "common discussion in the plant in 2010." Pl. Dep. at 64:19–20. In or around early June 2012, when Plaintiff learned Speights received the Senior Engineer position, she contacted Human Resources Manager June Kerr (over 40-year-old white American). Pl. Dep. at 66:3–67:24; R. Stuckey Dec., at ¶3(e). When asked what she said to Kerr, Plaintiff testified "I don't remember specifically, but it was something to the effect of - - that there is inappropriate

6

behavior between Marc and Jessica." Pl. Dep at 66:11–15.

Plaintiff alleges that Rosser must have learned that she had reported the relationship to Couture, singled her out for doing so, and forced Couture to give her a P2 rating so that she would not get the Senior Engineer position. Pl. Dep. at 1120:3–121:19. Plaintiff admits she has no factual evidence supporting her theory, and there is no evidence that Rosser had any input in the Senior Engineer hiring decision or was even aware that Plaintiff ever complained about him. *Id.*

Speights Employment-Eligibility Issues

When Defendant offered Speights the Senior Engineer position in or around early June 2012, she was working at the plant through a placement firm. Simmons Dep. at 33:14–24. Part of the hiring process includes employment eligibility verification through the U.S. Citizenship and Immigration Service's E-Verify system. Simmons Dep. at 37:6–18. When Speights' employment eligibility was checked with the E-Verify system, it returned with a mismatch on Speights' nationality. Simmons Dep. at 38:5–13. Specifically, Speights indicated that she was American but, per E-Verify, she was Liberian with an ineligible work status. *Id.*

As background, Speights was born in Liberia, but grew up in Atlanta, Georgia. Simmons Dep. 94:21–95:20. Her father became naturalized when Speights was a child and Speights believed that she also became a citizen as his dependent child. *Id.* Unbeknownst to Speights, her father's naturalization had not affected her citizenship. *Id.* The employment eligibility issue had not come up for Speights in the past because she believed she was a U.S. citizen and always had the requisite paperwork to complete an

7

IRS Form I-9 Employment Eligibility Verification, including a driver's license and social security card. *Id.* The error was only discovered when Defendant ran her information through the E-Verify system. When Defendant discovered that Speights was not eligible to work in the plant as a non-U.S. citizen, it immediately terminated her employment pending her ability to secure such eligibility. Simmons Dep. 38:16–18.

In or around October 2012, Speights resolved her employment eligibility issues and Defendant rehired her to the Senior Engineer position. Simmons Dep. at 39:9–12. Per Defendant's practice, a new job posting (requisition no. 14776BR) was created for the Senior Engineer position. Simmons Dep. at 40:16–25. Plaintiff testified that it was generally understood that Speights had already been selected for the position and that the posting was a formality. Pl. Dep. at 157:15–158:7.

Plaintiff's EEOC Filing

On March 13, 2013, Plaintiff filed an Intake Questionaire with the Equal Employment Opportunity Commission ("EEOC"), but she did not file her charge of discrimination ("Charge") until June 1, 2013. Therefore, Plaintiff's Charge was file 358 days after learning Speights had been awarded the Senior Engineer position in June 2012, but fewer than 300 days after she was rehired for the position in October 2012.

II.     Discussion

A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that

summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.     Analysis

1.     Timeliness of Plaintiff's EEOC Charge

Defendant argues that Plaintiff's claims are time-barred because she failed to file her Charge within 300 days of the failure to promote her on June 8, 2012. [ECF No. 25-1 at 14]. Plaintiff argues that her Intake Questionaire should constitute a charge, as it was signed and contains the pertinent information. [ECF No. 31 at 9]. Plaintiff further argues that even if the court were to find her claim is time-barred as to the June 2012 hiring

decision, her Charge was timely as it relates to the October 2012 hiring decision.

An intake questionnaire may satisfy the charge-filing requirement under certain circumstances. *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). However, those conditions are not present here. Significantly, *Holowecki* permitted the intake questionnaire to suffice as a charge because the plaintiff in the case included along with her questionnaire a six-page affidavit detailing the alleged unlawful acts and requesting the EEOC to take action against the employer's alleged discrimination. *Holowecki,* 552 U.S. at 405. Thus, the Court found that the intake questionnaire met the requirements of a charge contained in the statute because it contained a "request for the agency to act." *Id.* Although Plaintiff provided detailed information on attached sheets, she did not provide an affidavit or request the EEOC take action. [ECF No. 32-11].

Additionally, courts interpreting Title VII and *Holowecki* have demanded that for an intake questionnaire to be properly considered as an administrative charge, it must be declared under penalty of perjury. *See, e.g., Graves v. Indus. Power Generating Corp.,* No. 3:09cv717, 2011 WL 63696, *8 n. 19 (E.D.Va. Jan.5, 2011); *Grice v. Baltimore Cnty., Md.,* No. JFM 07–1701, 2008 WL 4849322, *4 (D.Md. Nov. 5, 2008); *see also* 42 U.S.C. § 2000e–5(b). Plaintiff's Intake Questionaire was not signed under penalty of perjury. [ECF No. 32-11].

Finally, when determining whether an intake questionnaire suffices as an administrative charge, courts consider the language on the intake questionnaire form itself. *See Holowecki,* 552 U.S. at 405; *Green v. Wal-mart Stores, Inc.,* No. 2:11-2219-RMG-BHH, 2012 WL 2048207, *2–3 (D.S.C. May 3, 2012), *adopted by* 2012 WL

2046124 (D.S.C. June 6, 2012) (finding that an intake questionnaire did not constitute a charge when it contained a disclaimer stating that "COMPLETION AND SUBMISSION OF THIS QUESTIONNAIRE DOES NOT IMPLY OR CONSTITUTE THE FILING OF A CHARGE"); *Toro v. Sci. Applications Int'l Corp.,* C/A No. 2:12-1833-DCN, 2013 WL 652568 (D.S.C. Feb. 21, 2013) (finding that a conspicuous disclaimer on the initial inquiry questionnaire form prevented it from being construed as a request for action); *Adams v. U.S. Airways, Inc.,* 2:10-1658-RMG-BHH, 2011 WL 1261451, *4 (D.S.C. Mar. 16, 2011), *adopted by* 2011 WL 1261451 (D.S.C. Apr. 5, 2011) (finding that the intake questionnaire could be considered as a charge when the questionnaire form explicitly stated that the EEOC would consider the questionnaire "to be a sufficient charge of discrimination" if it was the only timely form filed).

The intake questionnaire completed by Plaintiff does not meet the requirements discussed above. It contains a disclaimer, expressly stating that **"Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge."** [ECF No. 32-11 at 2] (emphasis in original). Moreover, it reminds the person completing the questionnaire that a charge, not the questionnaire, must be filed within the time limits imposed by law. *Id.* at 3, 6, 7. Therefore, Plaintiff's claim for the June 2012 failure to promote is time-barred.

2.     Discrimination Claims

Even if Plaintiff's June 2012 failure to promote claim were not time-barred, both her June 2012 and November 2012 failure to promote claims fail on the merits. In claims brought under Title VII and the ADEA, absent direct evidence of discrimination, as is the

case here, Plaintiff may prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802.

To state a prima facie case of discriminatory failure to promote under Title VII or the ADEA, Plaintiff must prove: (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) Defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005); *Gurganus v. Beneficial N. Carolina, Inc*, 25 F. App'x. 110, 111 (4th Cir. 2001) (applying Title VII proof scheme to ADEA failure-to-promote claim).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the decision not to promote. *Id.* This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993). Once Defendant meets its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally

12

discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

a.    Plaintiff has failed to establish a prima facie case

Defendant argues that Plaintiff has failed to make a prima facie case because the position required a bachelor's degree and two to six years of applicable engineering experience, which she did not have. [ECF No. 25-1 at 18]. Plaintiff argues that she has experience equivalent to the job requirements.

Plaintiff argues that Defendant has regularly equated eight years of applicable experience to a baccalaureate degree in the past. Defendant has a NRC License that provides that "eight years applicable experience is equivalent to a baccalaureate degree." Parr Aff. at ¶3.[8] However, such language refers to the threshold limits Defendant's employees must meet in order for Defendant to comply with NRC regulations, and is not a human resources regulation. *Id.* at ¶5. Defendant has specific equivalency standards such that experience may equate to a bachelor's degree, but the record is devoid of the appropriate calculation for Plaintiff's application for the Senior Engineer position. Simmons Dep. at 90:3–93:21. Viewing the facts in the light most favorable to Plaintiff for summary judgment purposes only, Plaintiff's applicable work experience combined with her associate's degree may have been sufficient to equate to a bachelor's degree.

However, Plaintiff has provided no evidence showing that her resume reflected

─────────────────
[8] The affidavit of Nancy Parr may be found at ECF No. 35-3.

that she had the required engineering experience. Although Plaintiff testified that she considered her work from April 1981 until January 1983 "engineering-based" (Pl. Dep at 16:5–11), she could not point to any reference on her resume indicating that it was engineering experience. Therefore, because Plaintiff cannot show that she demonstrated to Defendant that she was qualified for the job, she has failed to make a prima facie case, and the undersigned recommends Defendant be granted summary judgment on Plaintiff's discrimination claims. However, in an abundance of caution and in the event the district judge finds that Plaintiff has made a prima facie case, the undersigned further analyzes Plaintiff's claims as follows.

### b.     Burden Shifting

Defendant contends that Speights was selected for the position over Plaintiff because Speights had better academic and work credentials than Plaintiff and an absence of behavioral issues.  [ECF No. 25-1 at 19]. Therefore, the burden shifts back to Plaintiff to show that Defendant's proffered reasons were pretext.

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Billingslea v. Astrue*, C/A No. 6:10-1467, 2012 WL 988125, at *4 (D.S.C. March 22, 2012) (citations omitted). "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct. . . . It is not enough to disbelieve the [employer]." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000))

14

(internal citations omitted).  Rather, Plaintiff must demonstrate that a reasonable jury could "believe [her] explanation of intentional . . . discrimination." *Id.*

Plaintiff makes the following arguments to show that Defendant's reason for hiring Speights instead of Plaintiff was pretext for discrimination: (1) Plaintiff believes she was more qualified; (2) Defendant did not accept her eight years of experience as equivalent to a bachelor's degree, as it had done in the past; (3) Plaintiff's 2011 performance review was allegedly altered by her superiors; and (4) Defendant has an affirmative action policy and had recently had attrition of minority employees.

Plaintiff's belief that she was more qualified than Speights does not show pretext, as it is the employer's perception, and not the employee's self-assessment, that is controlling. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir. 1980). Similarly, Plaintiff's contention that her eight years of applicable experience should have equated to a bachelor's degree is insufficient to show pretext. There is no evidence that the absence of a bachelor's degree was the sole reason for Defendant's determination that Plaintiff was not qualified. As discussed above, Plaintiff's application and resume failed to show that she possessed the requisite engineering experience. Courts do not sit as super-personnel departments second guessing an employer's perceptions of an employee's qualifications. *Smith v. University of North Carolina,* 632 F.2d 316, 345–46 (4th Cir. 1980); *see also Evans v. Technologies Applications & Servs. Co.,* 875 F.Supp. 1115, 1120 (D. Md. 1995), *aff'd,* 80 F.3d 954 (1996).

Plaintiff also argues that the alleged change in her evaluation rating from a P3 to a P2 shows pretext. Assuming for the purposes of this motion that Plaintiff's rating was

changed, Plaintiff has not presented any evidence showing a change was made for discriminatory reasons. As Defendant points out, all of the decision-makers that Plaintiff believes discriminated against her for being a white American over 40 were also white Americans over 40. While not dispositive, this fact "substantially weakens any inference of discrimination." *Orgain v. City of Salisbury*, 305 F. App'x 90, 103 (4th Cir. 2008) (citation omitted). Although this inference can lose its force when a plaintiff presents sufficiently compelling evidence of discrimination, *Adams v. Greenbrier Oldsmobile/GMC/Volkswagen, Inc.*, 172 F.3d 43 (table decision), 1999 WL 34907, *5 (4th Cir. 1999), Plaintiff has presented no evidence, beyond her own speculation, of discrimination.[9]

Finally, Plaintiff argues that Defendant hired Speights for the position because Defendant had an affirmative action policy ("AAP") and the EH&S department had recently experienced attrition from some African-Americans due to the voluntary separation policy. Plaintiff admits that this theory is based purely on her speculation. Pl. Dep. at 108:4–15. The undisputed evidence in the record show that the hiring manager was not even aware of the AAP. Watkins Dep. at 60:23–25. Further, Simmons testified that Defendant's AAP focused on outreach and did not includeany quotas. Simmons Dep. at 29:3–23. He also testified that Defendant compiles the data for the AAP once a year,

---

[9] In addition, Plaintiff alleges that the calibration meeting that allegedly led to Plaintiff's rating being changed from P3 to a P2 occurred around April 16, 2012 [ECF No. 31], and that the Voluntary Separation Package (which was the reason for Adams' decision to vacate the position) was not announced until April 27, 2012. Therefore, Plaintiff alleges her rating was changed prior to the existence of any vacancy of the Senior Engineer position. [ECF No. 32-11 at 11].

but the EH&S department is not specifically analyzed. Simmons Dep. 29:12–30:25. Plaintiff has failed to show that the existence of an AAP shows that Defendant's reasons for failing to promote her were pretext.

Because Plaintiff has not shown any evidence of pretext, no reasonable juror could believe Plaintiff's explanation of intentional discrimination. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim of failure to promote based on race, national origin, and age discrimination.

3.     Retaliation Claims

Plaintiff asserts retaliation claims under Title VII and the ADEA. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The ADEA contains a virtually identical subsection. *See* 29 U.S.C. § 623(d).

To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). Once Plaintiff establishes the elements of her prima facie case, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* Plaintiff then has the burden to show that Defendant's legitimate,

17

non-retaliatory reason is pretextual.  *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

Plaintiff alleges she engaged in protected activity when she complained: (1) to HR and Couture that Rosser and Caulder were engaged in an inappropriate relationship, and (2) to HR that Speights was awarded the Senior Engineer position.

Defendant argues that Plaintiff did not engage in protected activity related to her complaints about Rosser and Caulder's relationship, because she knew it was a consensual relationship. Workplace complaints are only protected by Title VII if a plaintiff can show: (1) a subjective, good faith belief that the employer was violating Title VII; and (2) that the belief was objectively reasonable in light of the facts. *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003). Complaints about consensual relationships do not fall within the scope of Title VII protected activity and cannot form the basis of a retaliation claim. *See Mundy v. Palmetto Ford*, 998 F.2d 1010 (Table), 1993 WL 280340, *2 (4th Cir. 1993) (complaining of preferential treatment based on a consensual affair is not protected activity under Title VII).

Although Plaintiff argues that it may have been reasonable for Plaintiff to believe that there was quid pro quo sexual harassment taking place between Rosser and Caulder, such allegations are not supported by the record. Further, the Fourth Circuit has declined to create such an expansion to the law.  *Id*. ("Like the Second Circuit, '[w]e can adduce no justification for defining "sex," for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement.'") (quoting *DeCintio v. Westchester County Medical Ctr.*, 807 F.2d 304, 307 (2d Cir. 1986)). Therefore, Plaintiff has failed to make a

prima facie case for retaliation based on her complaints about the relationship between Rosser and Caulder.

Plaintiff also alleged retaliation based on her complaints about Speights having received the Senior Engineer position. First, in her deposition Plaintiff answered in the negative when asked "Do you believe that hiring Ms. Speights was retaliatory against you in any way?" Pl. Dep. at 108:23–24.[10] Additionally, although Plaintiff testified that she complained about Speights' hiring, she has not asserted that she told anyone she believed it was discriminatory. Pl. Dep. at 66-3–67:24.

Even if Plaintiff could show she engaged in protected activity, she has not shown a causal connection between her complaints and Speights' hiring. Plaintiff claims that she complained in June 2012, when the decision to hire Speights occurred. The alleged adverse action was in November 2012, when the position was advertised again and Speights was offered the position. The temporal proximity of five months is insufficient alone to show a causal connection. *See, e.g., Pascual v. Lowe's Home Ctrs., Inc.*, No. 05-1847, 2006 WL 2226571 (4th Cir. Aug. 2, 2006) (holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); *Shields v. Federal Express Corp.*, No. 03-2103, 2005 WL 102990 (4th Cir. Jan. 19, 2005) (three to four months was insufficient to raise

---

[10] Plaintiff then clarified that she believed Rosser wanted to award Speights with a job because she was friends with Caulder. Pl. Dep. at 110:22–111:5. Plaintiff appears to believe that such favoritism is retaliatory. Pl. Dep. at 110:11–111:14. 18. However, Plaintiff acknowledged that such an allegation fails to state a claim for retaliation. Pl. Dep. 110:16–18 ("I believe it was not so much discriminatory as retaliatory, but it's – that's not the – that's not covered . . .").

an inference). Here, Plaintiff has provided no other evidence of causation, and in fact, testified that it was generally understood that Speights had already been selected for the position. Pl. Dep. at 157:15–158:7. Therefore, Plaintiff cannot make a prima facie case of retaliation based on her complaint about Speights being selected in June 2012.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [ECF No. 25] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 9, 2015                              Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).