**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Sarah J. Jeffries, | ) | |
| | ) | Civil Action No. 3:14-cv-01317-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Westinghouse Electric Company, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Defendant Westinghouse Electric Company, LLC ("Defendant") moves for summary judgment on Plaintiff Sarah Jeffries's ("Plaintiff") discrimination claims regarding Defendant's alleged failure to promote her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (2012) ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), as well as on Plaintiff's retaliation claims under both Title VII and the ADEA. (ECF No. 25.) This matter is before the court on the Magistrate Judge's Report and Recommendation ("Report") recommending that this court grant Defendant's motion. (ECF No. 40 at 21.)[1]

For the reasons below, this court **ADOPTS** the Magistrate Judge's findings and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 35).

---

[1] The Parties, in addition to submitting briefing, appeared before this court to argue this matter on February 26, 2015.

## II.    JURISDICTION

Because Plaintiff's claims arise under federal law, this court has personal and subject matter jurisdiction under 28 U.S.C. § 1331 (2012).  Venue is proper in the Columbia Division of the United States District Court for the District of South Carolina under 28 U.S.C. § 1331 (2012).

## III.    LEGAL STANDARDS

### A. *Magistrate Judge's Report*

The Magistrate Judge makes only a recommendation to this court that has no presumptive weight—the responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court reviews *de novo* only those portions of a Magistrate Judge's Report to which specific objections are filed, and it reviews those portions not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error.  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify—in whole or in part—the Magistrate Judge's recommendation or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

### B. *Summary Judgment*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence affects the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  More specifically, a genuine question of material fact exists where, after

2

reviewing the record as a whole, the court finds that a reasonable factfinder could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. However, "mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## IV.     RELEVANT BACKGROUND AND THE MAGISTRATE'S REPORT[2]

Plaintiff is a 59-year-old, white American currently employed as a Planning Specialist at Defendant's Columbia, South Carolina facility. (*See generally* ECF No. 32-1.) Defendant employer first hired Plaintiff on July 31, 2000, as a Health Physicist. (*Id.*) On May 29, 2012, Plaintiff applied for a Senior Engineer position. (*Id.* at 60.) Hiring managers of Defendant employer wanted the position to include engineering responsibilities so that Defendant could adapt to anticipated regulatory changes. (*See* ECF No. 32-10 at 13–14.) Defendant's hiring

---

[2] Other specific facts of this matter are discussed in the Report and Recommendation. (ECF No. 40.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

3

managers hired Eris Speights ("Speights"), a black, Liberian 44-year-old female, who had been working for Defendant on a contract basis for eight years. (ECF No. 25-8 at 5.) Defendant stated that they hired Speights instead of Plaintiff because Speights had superior academic and work credentials, as well as a better work record. (ECF No. 25-1 at 11, 19.)

Between 2009 and 2010, Plaintiff complained to a supervisor about an alleged consensual romantic relationship Rosser had with a subordinate. (ECF No. 32-1 at 41–44.) After Plaintiff learned that Speights received the Senior Engineer position, Plaintiff contacted Human Resources. (ECF No. 32-1 at 45–46.) Plaintiff testified that she communicated to Human Resources "something to the effect of - - that there is inappropriate behavior" between one of her supervisors and his subordinates. (ECF No. 32-1 at 45.) Plaintiff alleges that the supervisor she reported to Human Resources must have learned that she reported him and that he, in retaliation, forced another supervisor to assign her a low performance review so that she would not get the Senior Engineer position in dispute. (ECF No. 32-1 at 76–77.) Plaintiff admits she has no factual evidence supporting her theory, and she has no evidence that the supervisor she reported had any input in the Senior Engineer hiring decision or was even aware that Plaintiff ever complained about him. (*Id*.)

With these facts as background, Plaintiff's claims can be summarized as allegations that Defendant unlawfully failed to promote her to the engineering-related management position in June 2012 and in November 2012 because she is White, because she is fifty-seven (57) years of age, and because she reported "discriminatory concerns" to the management of Defendant employer. (*See generally* ECF No. 1.) Because Plaintiff alleges that she was the victim of discrimination when Speights, a black woman, instead was promoted to the Senior Engineering

position, her claims can be characterized as those of "reverse discrimination." *See, e.g.*, *Lucas v. Dole*, 835 F.2d 532, 532 (4th Cir. 1987).

In his Report, the Magistrate Judge made several findings regarding Plaintiff's legal claims and Defendant's Motion for Summary Judgment (ECF No. 25). These findings included that:

- Plaintiff's June 2012 failure to promote claims were time-barred (ECF No. 40 at 11);

- Plaintiff's November 2012 claim of failure to promote based on race, national origin, and age discrimination lacked merit because Plaintiff cannot make out a prima facie case for such discrimination under Title VII or ADEA, nor can she show that Defendant's proffered reasons for denying her the promotion was pretext[3] (ECF No. 40 at 11–17); and

---

[3]The Magistrate Judge correctly summarized the applicable standard for Plaintiff's discrimination claims under Title VII and the ADEA. (ECF No. 40 at 12–13.) A plaintiff generally proves her Title VII and the ADEA claims of discrimination under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802. To state a prima facie case of discriminatory failure to promote under Title VII or the ADEA, a plaintiff must prove that: (1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005); *Gurganus v. Beneficial N. Carolina, Inc*, 25 F. App'x. 110, 111 (4th Cir. 2001) (applying Title VII proof scheme to ADEA failure-to-promote claim). Upon demonstrating a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its employment decision, *id.*, after which the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Throughout the *McDonnell Douglas* burden-shifting scheme, Plaintiff has the ultimate burden of proving that Defendant intentionally discriminated against her and presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

- Plaintiff's November 2012 claim of failure to promote based on retaliation also lacked merit because she could not make out a prima facie case of retaliation under Title VII or the ADEA.[4]

Plaintiff filed an Objection (ECF No. 43) to the Report, to which Defendant filed a Reply (ECF No. 44).

## IV.     ANALYSIS

*A. Time-Bar of Plaintiff's June 2012 Discrimination and Retaliation Claims*

Plaintiff first objects to the Magistrate Judge's determination that her June 2012 promotion claim was time-barred because, she argues, the initial Equal Employment Opportunity Commission ("EEOC") questionnaire she filed regarding her discrimination claims was "validated by the subsequent charge." (ECF No. 43 at 4.)  She argues that, alternatively, the deadline to file her charge of discrimination ("Charge")—300 days after she learned Defendant would not be promoting her[5]—should have been equitably tolled. (*Id.*)

---

[4] The Magistrate Judge also correctly summarized the applicable standard for Plaintiff's retaliation claims. (ECF No. 40 at 17–18.)  Under Title VII and the ADEA, an employer cannot discriminate against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *see* 29 U.S.C. § 623(d) (forbidding the same under the ADEA).  To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).  Once Plaintiff establishes the elements of her prima facie case, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for taking the adverse employment action. *Id*.  Plaintiff then has the burden to show that Defendant's legitimate, non-retaliatory reason is pretextual. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

[5] Under 42 U.S.C. § 2000e-5(e)(1) (2012), a Title VII or ADEA Charge must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *Whitaker v. Nash Cnty.*, 504 Fed. Appx. 237, 240 (4th Cir. 2013) (internal quotations omitted). When the Charge is not timely filed, the claims underlying the charge are time-barred and can no longer be asserted in court. *See, e.g.*, *Kelley v. Int'l Bhd. of Teamsters*, 2013 U.S. Dist. LEXIS 179776, at *9–10 (D.S.C. 2013) (citations omitted).

Plaintiff's claims fail. Plaintiff filed her Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC") on March 13, 2013, (ECF No. 32-11 at 1), but she did not file her Charge until June 1, 2013. (ECF No. 25-2 at 82–83.) Therefore, Plaintiff's June 1, 2013 Charge was file filed three hundred and fifty-eight (358) days after she learned that she had not been promoted to the position in dispute in June 2012. As the Magistrate Judge correctly noted, none of the circumstances exist in this case to permit Plaintiff's intake questionnaire to satisfy the charge-filing requirement for her June 2012 claim. (*See* ECF No. 40 at 9–11 (citing relevant case law).) Plaintiff provides no argument or other persuasive authority as to how any of these circumstances exist, nor does she provide any law supporting her assertion that her claim is not time-barred because her initial EEOC questionnaire was "validated by the subsequent charge." (ECF No. 43 at 4.)

Plaintiff, however, does explicitly argue that "the 300 days should be equitably tolled to allow the Plaintiff's claim for the June 2012 promotion" because she should not be "penalized for delays caused by the EEOC when she timely pursued her claims." (*Id.*) But after reviewing the record, this court can find no evidence that the EEOC caused delays such that equitable tolling is warranted for Plaintiff's June 2012 claims. *See Coleman v. Talbot Cty. Det. Ctr.*, 242 F. App'x 72, 74 (4th Cir. 2007) (explaining that a plaintiff must show both that she has been diligently pursuing her rights and that extraordinary circumstances stood in her way, but further recognizing the rare circumstances under which equitable tolling should be granted). Indeed, as Defendant notes, "Plaintiff was represented by counsel throughout the process and plainly advised by the Intake Questionnaire on how to timely file a charge. Despite such legal representation and direction, Plaintiff still did not timely file." (ECF No. 44 at 4–5 (citing Pl.

Opposition, Ex. G, p. 2 (Dkt. No. 32-11)).)   The Magistrate Judge was correct to determine that Plaintiff's June 2012 discrimination claims are time-barred.

While the Magistrate Judge made no explicit finding that Plaintiff's November 2012 discrimination claim also was time-barred, Defendant maintains that her "failure to timely file a charge with respect to the June 8, 2012 hiring forecloses all of her claims." (*Id.* at 5.)  Defendant argues:

> [T]he decision to hire Speights only occurred once, on June 8, 2012. *See* Dkt. No. 25-1 (hereinafter, "Def. SJ Mem."), pp. 10-11; Report, p. 6. Plaintiff understood this, and also understood that the position's reposting in October 2012 was merely a formality to process Speights' hiring after her immigration were resolved. *See* Def. SJ Mem., pp. 12-14, FN10 (discussing Plaintiff's testimony that she understood the October 2012 posting to be a formality necessary to hire Speights). In short, Plaintiff knew of the complained about hiring decision as of June 8, 2012, but did not file her charge of discrimination until June 1, 2013, nearly one year later.

(*Id.*)

This argument by Defendant, however, is not of much import here because Plaintiff's November 2012 discrimination and retaliation claims, as discussed below, fail on the merits.

### B.  *Plaintiff's November 2012 Discrimination Claims*

Based on the Title VII and ADEA requirements for showing a prima facie case of employment discrimination discussed *supra* note 1, the Magistrate Judge found that Plaintiff had failed to demonstrate to Defendant that she was qualified for the job. (ECF No. 40 at 14.)  As part of her objections, Plaintiff contends that the Magistrate Judge was wrong to conclude that Plaintiff could not prove she was qualified for the job because she had the requisite experience. (ECF No. 43 at 5–6.)   Plaintiff relies, in response, on what she terms the job postings' "boilerplate language" describing the "two to six years of applicable engineering experience" that is "typically" required, arguing that this language suggests that engineering experience is not

8

*always* required for the employment position in dispute. (*Id.* at 5.) Plaintiff argues that because the posting does not state what experience "actually" is required, she needed only to fulfill the "minimum requirements" of "3 years experience in the nuclear industry or other appropriate user facility," presumably, to show that she was "qualified." (*Id.* at 5 (citations omitted).)

This is a tenuous argument that this court ultimately does not find availing. Specifically, Plaintiff fails to adequately explain how the fulfillment of the minimum requirements of "experience in the nuclear industry or other appropriate user facility," (ECF No. 43 at 5), equates to or altogether excuses the additional stated standard requirements of engineering experience and a bachelor's degree in engineering, a related technical discipline, or an equivalent, (ECF No. 32-3 at 1–6)—neither of which Plaintiff has, (*see* ECF No. 32-1 at 60–67))[6]—for the "Senior Engineer" position for which she was passed up.[7]

And like the Magistrate Judge, this court also finds that even if Plaintiff could show that she was qualified for the position based on the record's evidence, granting summary judgment on her claims still would be appropriate under the Title VII and ADEA standards for making out a discrimination claim. (ECF No. 40 at 14–17.) As part of his Report, the Magistrate Judge

---

[6]Contrastingly, Speights had a bachelor's degree in computer science and other experience Defendant believed made her more ideal for the programming duties of the Senior Engineering position. (ECF No. 25-5 at 19–22.)

[7]Moreover, because this is a reverse discrimination case, this court takes note of the fact that while the Fourth Circuit has not reached the specific issue, *see Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987); *Weeks v. Union Camp Corp.*, 2000 WL 727771, at *6, n. 13 (4th Cir 2000), the Court of Appeals for the Sixth, Seventh, Eighth, Tenth, and D.C. Circuits require an enhanced prima facie showing of Plaintiffs with reverse discrimination claims. *See, e.g.*, *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004); *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004); *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

specifically found that Plaintiff could not show that Defendant's reason for hiring another employee instead of Plaintiff was pretext for discrimination, (*see id.*), that which Title VII also requires of her.  *See supra* note 1 (outlining the requirements of Title VII and the ADEA for making out an employment discrimination claim).

In response to this issue of pretext, Plaintiff generally objects that the Magistrate Judge did not "consider the evidence in the light most favorable to the [her]" and "consider the totality of the evidence rather than in isolation."  (ECF No. 43 at 6.)  Plaintiff specifically challenges the following:

- the Magistrate Judge's conclusion that Plaintiff's assertion that she was "more qualified" than the person promoted was "speculative" (*id.* at 6.);

- the Magistrate Judge's finding that the "alteration of Plaintiff's performance review rating . . . was not probative of pretext or discrimination." (*id.* at 7.);

- the Magistrate Judge's finding that Defendant employer's alleged quota-based affirmative action policy was not pretext (*id.* at 9); and

- the Magistrate Judge's apparent decision to "ignore" as evidence of pretext the fact that "Defendant bent over backwards for [the person hired for the position] despite the numerous [citizenship] issues related to her hiring." (*id.* at 9–10.)

If, upon Plaintiff's hypothetical demonstration of a prima facie case, Defendant produced a legitimate, nondiscriminatory reason for hiring another employee instead of Plaintiff, then Title VII requires Plaintiff to demonstrate by a preponderance of the evidence that Defendant's reason is pretext for discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Here, Defendant stated that they hired another person instead of Plaintiff because that person had superior academic and work credentials, as well as a better work record.  (ECF No.

25-1 at 19.) The Magistrate Judge found that Plaintiff, despite her litany of claims, failed to show any evidence of pretext and that therefore no reasonable juror could believe Plaintiff's explanation of intentional discrimination. (ECF No. 40 at 17.)

This court similarly finds that assuming, *arguendo*, that Plaintiff could demonstrate a prima facie case for her discrimination claims, she still fails to raise a genuine issue of material fact on the issue of pretext for the purposes of the summary judgment determination before this court. This is because what essentially can be summarized as Plaintiff's disagreement with Defendant's assessment of her credentials, (ECF No. 43 at 6–7), does not equate to a legal claim. And Plaintiff simply does not offer enough evidence of her assortment of claims, including claims that her employment reviews were conspiratorially modified, that she was not promoted for the sake of preserving an affirmative action quota of which the hiring manager testified he was not aware, (*see* ECF No. 35-4 at 3), or that Defendant's various justifications for not promoting her as well as their rehiring of Speights after her citizenship issues were resolved[8] is proof of pretext. In short, viewing the evidence in the light most favorable to Plaintiff and considering the "totality" of her evidence, (ECF No. 43 at 6), even if Plaintiff could demonstrate her prima facie case, her claims of pretext would fail. Therefore, Defendant's Motion for

---

[8] The court incorporates here the Report's summary of this specific issue: "Speights was born in Liberia, but grew up in Atlanta, Georgia. Her father became naturalized when Speights was a child and Speights believed that she also became a citizen as his dependent child. Unbeknownst to Speights, her father's naturalization had not affected her citizenship. The employment eligibility issue had not come up for Speights in the past because she believed she was a U.S. citizen and always had the requisite paperwork to complete an IRS Form I-9 Employment Eligibility Verification, including a driver's license and social security card. The error was only discovered when Defendant ran her information through the E-Verify system. When Defendant discovered that Speights was not eligible to work in the plant as a non-U.S. citizen, it immediately terminated her employment pending her ability to secure such eligibility. In or around October 2012, Speights resolved her employment eligibility issues and Defendant rehired her to the Senior Engineer position." (ECF No. 40 at 7–8 (citations omitted).)

Summary Judgment (ECF No. 25) must be granted as to Plaintiff's Title VII and ADEA discrimination claims.

### C.  Plaintiff's November 2012 Retaliation Claims

Based on the requirements for showing a prima facie case of employment discrimination, *see supra* note 2, the Magistrate Judge found that Plaintiff's retaliation claims fail.  (ECF No. 40 at 17–20.)  Specifically, the Magistrate Judge determined that Plaintiff could not show that she engaged in "protected activity," as required by Title VII and the ADEA.  (ECF No. 43 at 18–19.)  In response, Plaintiff objects to the Magistrate Judge's suggestion that Plaintiff, herself, expressed that she did not find retaliatory the hiring of Speights instead of her.  (ECF No. 43 at 10–11.)  But Plaintiff's contention bears little on the Magistrate Judge's apt conclusion that Plaintiff's complaint about a consensual romantic relationship between other colleagues does not qualify as protected activity for the purposes of a retaliation claim.  (*See* ECF No. 40 at 18.)  Moreover, this court agrees that the record reflects no evidence that "quid pro quo sexual harassment" took place or affected Plaintiff.  (*Id.*)

The Magistrate Judge also determined that Plaintiff's retaliation claim failed given the "insufficien[cy]" of the "temporal proximity of five months" between her complaints and her being passed over for the promotion.  (*Id.*)  Plaintiff contends, however, that she "is not relying on mere temporal proximity alone," but rather "temporal proximity combined with other evidence and reasonable inferences drawn therefrom."   (ECF No. 43 at 11.)  The court finds no need to address this objection as it joins the Magistrate Judge's conclusion that Plaintiff did not engage in any "protected activity" to support a retaliation claim.

## V. CONCLUSION

As "drastic" as Plaintiff might find granting summary judgment, (ECF No. 43 at 3), this court, upon reviewing the record as a whole, finds that a reasonable factfinder could not return a verdict for Plaintiff in light of the evidence before the court. For this reason, this court **ACCEPTS** the Magistrate Judge's recommendation, (ECF No. 40 at 21), and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 25) on Plaintiff's discrimination and retaliation claims.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

March 1, 2016
Columbia, South Carolina